IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BARRY KATZ,**<br><br>  Plaintiff,<br><br>v.<br><br>**TRANSAMERICA LIFE INSURANCE COMPANY**<br><br>  Defendant. | **INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT**<br><br>**DOCKET NO.:**<br><br><br>**JURY TRIAL** |

**INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT**

Plaintiff Barry Katz, by and through his attorney, files this action on behalf of himself and other individuals who purchased a Merrill Lynch Investor Choice Annuity, IRA Series contract (hereafter, a "variable annuity contract" or "contract") and has been improperly charged for "premium taxes" prior to the Annuity Date of their contract. These contracts were initially sold by Merrill Lynch Life Insurance Company ("Merrill Lynch") until 2007, when Transamerica Life Insurance Company ("Transamerica Life Insurance" or "Defendant") acquired both Merrill Lynch, as well as its product, the Merrill Lynch Investor Choice Annuity. Plaintiff asserts that Transamerica Life Insurance has improperly charged all variable annuity contract holders who surrender their contract prior to the annuity date ("Annuity Date") for "premium taxes." In so doing, Transamerica Life Insurance has breached the contract it has made with each contract holder who went on to surrender their contracts, acting uniformly in violation of the terms and conditions of the variable annuity contracts. Plaintiff seeks injunctive

relief and damages to stop the wrongful conduct of Transamerica Life Insurance and to compensate those contract holders who have been wrongly charged.

## NATURE OF THE ACTION

1. Plaintiff is an individual that purchased a variable annuity contract from Transamerica Life Insurance. Transamerica Life Insurance charged Plaintiff for "premium taxes" when he surrendered his variable annuity contract prior to the Annuity Date. As Plaintiff alleges below, a charge for premium taxes prior to the Annuity Date is a violation of the terms and conditions of the contract. As a result, Plaintiff has been damaged, not only by the amount of the improper charge, but also by the reduction in contractual benefits that is a collateral consequence of the improper charge.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332. This Court has personal jurisdiction over Defendant because Defendant is doing business in Pennsylvania and is licensed in Pennsylvania. Furthermore, the aggregate amount in controversy for this class action exceeds $5,000,000, and, on information and belief, less than one-third of all Class Members reside in Pennsylvania. *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332 and 1711.

3. This Court has supplemental jurisdiction over the subject matter of any Pennsylvania common law and/or statutory claims pursuant to 28 U.S.C. §1367. Such claims form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Transamerica Life Insurance has agents and transacts business here. Venue is also proper

because a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

5.     Plaintiff Barry Katz is a citizen and resident of Rosemont, Pennsylvania. On November 3, 1993, Plaintiff purchased a variable annuity contract from Merrill Lynch, which was later acquired by Transamerica Life Insurance's parent company, Aegon NV, in 2007.[1] Transamerica Life Insurance took over the responsibility of issuing, distributing, and underwriting Merrill Lynch's insurance and investment products, including the Merrill Lynch Investor Choice Annuity products. The Annuity Date for Plaintiff's variable annuity contract is November 1, 2036.[2] The variable annuity contract provides, "[a]ny charges made by us attributable to premium taxes imposed by a state or other government will be deducted at the Annuity Date."[3] Nevertheless, when Plaintiff surrendered his contract on July 16, 2024, which is well before the Annuity Date, Transamerica Life Insurance deducted $603.27 for premium taxes from Plaintiff's variable account.

6.     Defendant Transamerica Life Insurance Company is organized as an insurance company under the laws of the State of Iowa and maintains its principal place of business and headquarters in Cedar Rapids, Iowa. Defendant Transamerica Life Insurance is licensed to transact insurance in all states except for New York and the District of Columbia,[4] and had assets of nearly $63 billion as of 2022.[5] Transamerica Life Insurance

---

[1] *See* https://www.aegon.com/sites/default/files/siteassets/media/press-releases/2007/print-version-aegon-and-merrill-lynch-finalize-relationship.pdf (last visited June 2, 2025).
[2] *See* Plaintiff's Variable Annuity Contract ("Contract"), attached hereto as Exhibit A, at 3.
[3] *See Id.* at 8.
[4] *See* https://www.transamerica.com/about-us/financial-strength#:~:text=Our%20financial%20strength-,Transamerica%20Life%20Insurance%20Company,Domiciled:%20Iowa;%20NAIC%20Number%2086231 (last visited May 30, 2025).
[5] *See* https://www.transamerica.com/press-release/transamerica-reduces-fees-floating-rate-

specializes in selling insurance, investment, and retirement products geared toward "helping people invest in a better future" and creating "financial freedom."[6] Transamerica Life Insurance sells variable annuity products around the country, including to residents in the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

7.  Plaintiff brings this nationwide class action on behalf of himself and other similarly situated variable annuity contract purchasers to halt and remedy the harm caused by Defendant Transamerica Life Insurance's systematic breach of its contract provisions in connection with the calculation of surrender charges.

8.  By way of background, Merrill Lynch marketed and sold its variable annuity products nationwide. Upon information and belief, prior to the 2007 acquisition, Merrill Lynch had its own insurance units that issued and underwrote variable annuities. Moreover, Merrill Lynch marketed and sold its variable annuity products through its financial advisor network.

9.  On December 31, 2007, Aegon, the parent company of multiple Transamerica subsidiaries, finalized its acquisition of Merrill Lynch Life Insurance Company.[7]

10. Subsequent to the 2007 acquisition, "Aegon's Transamerica companies . . . suppl[ied] insurance and investment products, including [] the flagship Merrill Lynch Investor Choice Annuity product through the acquired Merrill Lynch subsidiaries. [And]

---

fund#:~:text=(TCI)%2C%20member%20FINRA.,pension%2C%20and%20asset%20management%20company (last visited May 30, 2025).
[6] *See* https://www.transamerica.com/about-us/company-overview (last visited May 30, 2025).
[7] *See* https://www.aegon.com/sites/default/files/siteassets/media/press-releases/2007/print-version-aegon-and-merrill-lynch-finalize-relationship.pdf (last visited June 2, 2025).

[t]hrough its financial advisor network, Merrill Lynch [] continue[d] to serve the insurance needs of its clients through its core distribution and advisory capabilities."[8]

11. Specifically, As a part of its role, Transamerica Life Insurance issues the variable annuities, and the annuities are underwritten and distributed by Transamerica Capital, Inc. ("Transamerica Capital").[9]

12. As an issuer, Transamerica Life Insurance designs, creates, and guarantees the variable annuity contract. In executing these tasks, Transamerica Life Insurance: develops the annuity product, including its features, benefits, and investment option; manages the separate account where premiums are invested; and provides guarantees, such as death benefits and lifetime income options

## DEFENDANT'S BREACH OF CONTRACT

### A. The Structure of Transamerica's Variable Annuities

13. Variable annuities are hybrid insurance and investment products. The investment component consists of units of interest in a separate account that are registered as securities under the Securities Act of 1933. The separate account is registered as an investment company for purposes of the Investment Company Act of 1940 (ICA). The insurance components of variable annuities consist of an annuity insurance contract issued

---

[8] *Id.*

[9] *See Merrill Lynch IRA Annuity, Contract Prospectus*, p. 1, (2014), attached hereto as "Exhibit B,". Although the prospectus provided in 2014 that "[v]ariable annuities issued by Transamerica Advisors Life Insurance Company in Little Rock, Arkansas," Transamerica Advisors Life Insurance Company ("Transamerica Advisors") is no longer a distinct entity from Transamerica Life Insurance Company ("Transamerica Life Insurance") because Transamerica Advisors merged into Transamerica Life Insurance in 2019. *See In Re the Application of Transamerica Advisors Life Insurance Company For Approval of A Plan of Merger With Transamerica Life Insurance Company*, 2019 WL 2072684, at *1 (Iowa Sec. Bur. 2019).

by a state-regulated insurance company, and interests in one or more fixed accounts that invest in the general account of a state-regulated insurance company.

14. Annuities are complex products that contain a number of different parts that have differing effects and results depending on performance and decisions made by the purchaser. The deferred annuity can be broken down into two types, either a fixed or variable annuity. The basic difference is that fixed annuity premiums grow at a guaranteed fixed interest rate, whereas variable annuity premiums are invested in equity portfolios that fluctuate in value, thus being variable.

15. The variable annuities sold by Transamerica Life Insurance contain various components with different characteristics. The separate accounts, which contain sub-accounts that each hold a portfolio of stocks or bonds or other investments, are federally regulated, and (if no exemption applies) the interests in the separate accounts available under the variable annuity contracts are registered as securities and sold pursuant to federal security laws.

16. This particular variable annuity contract at issue here also includes a death benefit. A death benefit is designed to provide an insurance benefit when the contract owner dies prior to the annuity dates of the contract.

17. To purchase a variable annuity contract, a variable annuity product is selected, and then applied for by way of an application. Once the premium (purchase payment) is accepted by Transamerica Life Insurance, a contract is delivered to the annuity purchaser. The contract contains the terms and provisions of how the annuity will work, and describes fees and other various features of the annuity. The contract also contains the terms and provisions of how the optional death benefit rider will work, describes the fees

for those optional benefits, and the various features of those benefits. The contract is either accepted or rejected by the annuity purchaser.

18. One way that that Plaintiff and Class Members here can redeem policy proceeds from its variable annuity contract holders is by way of surrender. Per the Merrill Lynch IRA Annuity, Contract Prospectus, "*[a]t any time before the [A]nnuity [D]ate* [contract holders] may surrender the[ir] [c]ontract through a full withdrawal of the surrender value."[10] The "surrender value" is defined as "[t]he amount available upon surrender of the Contract. It is equal to the contract value reduced by any charges which apply upon surrender."[11] In other words, when one surrenders their annuity, they are essentially cancelling their contract and accessing the contract's cash value.

### B. Premium Taxes and the Contract Language Specifying When They Are Charged.

19. States impose a premium tax on insurance companies in every state as a substitute for the corporate income tax being imposed on insurance companies.[12] Although state premium taxes are imposed on the insurer, as opposed to the insured, insurers sometimes pass that expense onto the insured.

20. Here, Merrill Lynch Investor Choice Annuity, IRA Series contract provides, "Any charges made by [the insurer] attributable to premium taxes imposed by a state or other government will be deducted at the Annuity Date."[13] Given that contract holders can only surrender the variable annuity contract prior to the Annuity Date, any contract holder that

---

[10] *See* Exhibit B, at 39 (emphasis added).
[11] *Id.* at 8.
[12] MARTIN GRACE ET AL., INSURANCE PREMIUM TAXES* 1 (Ga. State Univ., 2007), https://ntanet.org/wp-content/uploads/proceedings/2007/006-grace-insurance-premium-taxes-2007-nta-proceedings.pdf (last visited June 2, 2025)

[13] *See* Plaintiff's Merrill Lynch Investor Choice Annuity, IRA Series contract, attached hereto as Exhibit B, at p. 8.

surrenders their contract should not ever be charged for premium taxes. Nevertheless, Transamerica Life Insurance has acted consistently and uniformly in violation of the terms and conditions of the variable annuity contracts by deducting premium taxes from contract holders' accounts anyway.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff seeks to represent a nationwide class.

The Nationwide Class

The proposed Nationwide Class is defined as follows: All persons who, within the applicable statute of limitations, purchased a Merrill Lynch Investor Choice Annuity, IRA Series contract from Merrill Lynch Life Insurance Company, Transamerica Life Insurance Company, or one of their affiliates, and incurred a charge for premium taxes when they surrendered prior to the Annuity Date of their contract.

22. Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

23. Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

24. The requirements of Rule 23(a)(1) are satisfied. The Nationwide Class is

reasonably estimated to be in the thousands or tens of thousands and is thus so numerous that joinder of all its members is impracticable. The precise number of class members and their addresses are unknown to Plaintiff, but can be ascertained through Defendant's records. Class Members may be notified of the pendency of this action by mailing, publication, or other notice.

25. The requirements of Rule 23(a)(2) are satisfied. There is a well-defined community of interest and there are common questions of fact and law affecting Class Members. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

    a. Whether Defendant violated the provisions of the variable annuity contracts in the way in which it assessed surrender charges;

    b. Whether Defendant is liable for the excess surrender charges that it has imposed;

    c. Whether Defendant has harmed the members of the class in connection with living benefits;

    d. Whether Defendant has harmed members of the class in connection with death benefits;

    e. Whether Defendant has harmed members of the class in connection to the loss of compound interest;

    f. Whether Plaintiff and members of the Nationwide Class have sustained damages; and

    g. Whether Plaintiff and the Nationwide Class are entitled to damages.

26. The requirements of Rule 23(a)(3) are satisfied. With respect to each putative class, Plaintiff's claims are typical of those of the absent Class Members. If brought and prosecuted individually, the claims of each class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories,

and seek the same relief.

27. The requirements of Rule 23(a)(4) are satisfied. The interests of Class Members are not antagonistic to the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of Class Members. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members. The claims of Plaintiff and Class Members are substantially identical, as explained above. While the aggregate damages that may be awarded to the Class Members are likely to be substantial, the damages suffered by the individual Class Members are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying the case as a class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendant's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class Member.

28. Plaintiff is willing and prepared to serve the Court and the putative Class in a representative capacity with all of the obligations and duties material thereto.

29. Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will adequately prosecute this action,

and will otherwise assert, protect, and fairly and adequately represent Plaintiff and all absent class members.

30. Class certification is appropriate under F.R.C.P. 23(b)(1), in that the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof and legal theories would also create and allow the existence of inconsistent and incompatible rights within the classes.

31. Class certification is appropriate under F.R.C.P. 23(b)(2), in that Defendant has acted or refused to act on grounds generally applicable to each class, making final declaratory, injunctive, or other relief appropriate.

32. Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual class members.

33. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a) individual claims by the class members would be impracticable as the costs of pursuit would far exceed what any one class member has at stake;

    b) little individual litigation has been commenced over the controversies alleged in this Complaint, and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

  c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

  d) the proposed class action is manageable.

34. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses of Class Members who were affected by their breach of contract.

## CAUSES OF ACTION
### COUNT ONE
### Breach of Contract

35. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36. Transamerica Life Insurance's practice of charging Plaintiff and Class Members for premium taxes on the surrender date rather than on the Annuity Date was done consistently and uniformly in a manner contrary to the terms and conditions of the applicable contracts. Plaintiff's contract provides, "Any charges made by [the insurer] attributable to premium taxes imposed by a state or other government will be deducted at the Annuity Date." Transamerica Life Insurance breached Plaintiff's contract by making a deductions for premium taxes prior to the contract's Annuity Date.

37. Transamerica Life Insurance's actions in violation of the variable annuity contracts were done intentionally or recklessly.

38. All conditions precedent to the liability or obligations of Transamerica Life Insurance's have occurred or have been waived.

39. Plaintiff and each member of the Nationwide Class have suffered damages in an amount to be determined. Plaintiff alleges that the total damages to the Nationwide

Class exceeds the sum of five million dollars ($5,000,000).

## COUNT TWO
### Injunctive Relief

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. Transamerica Life Insurance's actions in violation of the terms of the variable annuity contracts continue and are ongoing.

42. Plaintiff seeks an injunction to prohibit Transamerica Life Insurance from continuing to violate the terms of the variable annuity contracts with respect to the calculation of surrender charges.

43. Plaintiff has no adequate remedy at law because it would require successive lawsuits to compensate Plaintiff and members of the Class for the ongoing harm and the only effective way to protect the class members is to enjoin Defendant from the improper conduct.

44. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

45. Injunctive relief is appropriate for certification under Rule 23(b)(2) because Transamerica Life Insurance has acted on grounds and in ways that apply generally to all class members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class

Representative, and appointing Plaintiff's counsel as Class Counsel;

B.     Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.     Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, individually, and on behalf of the Class, seeks appropriate injunctive relief designed to prevent Defendant improperly charging them for premium taxes upon Plaintiff and the Class Members redemption of their policy proceeds from their variable annuity contracts prior to their respective Annuity Dates;

D.     Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.     Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.     Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## DEMAND FOR JURY TRIAL

46.    Plaintiff hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

-15-

Dated: June 18, 2025                             Respectfully submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler (PA ID#: 205954)
SWARTZ SWIDLER LLC
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Tel: (856) 685-7420
jswidler@swartz-legal.com

Jonathan Shub (PA ID#: 53965)
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
jshub@shublawyers.com